**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| **CYNTHIA WALKER, INDIVIDUALLY,**<br>**AND ON BEHALF OF ALL OTHER**<br>**SIMILARLY SITUATED CONSUMERS** | **PLAINTIFF** |
| **V.** | **CIVIL ACTION NO. 3:20-CV-96 CWR-FKB** |
| **EQUIFAX INFORMATION SERVICES, LLC;**<br>**AND MISSISSIPPI POWER & LIGHT; AND**<br>**WELLS FARGO, N.A.** | **DEFENDANTS** |

---

**EML'S MEMORANDUM IN SUPPORT OF ITS MOTION
*IN LIMINE* TO EXCLUDE IRRELEVANT, UNDULY PREJUDICIAL,
AND OTHER INADMISSIBLE EVIDENCE AT TRIAL**

---

Defendant Entergy Mississippi, LLC (f/k/a Entergy Mississippi, Inc., f/k/a Mississippi Power & Light Co.) ("EML") submits this memorandum in support of its motion *in limine* to exclude irrelevant, unduly prejudicial, and other inadmissible evidence at trial.

## BACKGROUND

In this Fair Credit Reporting Act ("FCRA") action, Plaintiff sued three defendants for alleged duplicate reporting of debts on her Equifax credit report, a $52 debt to EML and a $3,497 debt to Wells Fargo. Wells Fargo successfully compelled arbitration. [Docs. 40, 41]. Equifax has settled with the Plaintiff and been dismissed. Therefore, EML is the sole remaining defendant.

In the operative complaint, Plaintiff alleges that EML "failed to comply with the requirements imposed on furnisher of information pursuant to 15 U.S.C. § 1681s-2(b)." [Doc. 42] at ¶52.[1] Section 1681s-2(b), the only section of the FCRA that allegedly imposes duties on EML,

---

[1] As Plaintiff recognizes, EML is not engaged in the business of credit reporting for commercial gain. Instead, it provides information regarding persons who are delinquent in their debts to credit reporting agencies ("CRAs") such as Equifax, TransUnion, and Experian, who in turn distribute credit reports compiling information from various sources.

provides that if a person receives notice of "a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall" among other things investigate and correct the "accuracy of any information provided by [that] person to a consumer reporting agency." 15 U.S.C. § 1681s-2(b). Plaintiff alleges that "[i]n order to collect on the [$52] debt, and punish Plaintiff for the alleged non-payment … [EML] began reporting the alleged debt to Equifax in two separate trade lines, making it appear as though Plaintiff was twice delinquent." [Doc. 42] at ¶9. She alleges that she disputed Equifax's duplicate reporting of the $52 debt to Equifax in 2018, and Equifax in turn sent notice of the disputes to EML. *Id.* at ¶11. She alleges that both Equifax and EML failed to conduct a reasonable investigation and correct the duplicate $52 debts. *Id.* at ¶¶13–14. Plaintiff alleges that she suffered an unspecified amount of actual economic damages and emotional distress damages and requests punitive damages for EML's alleged "willful" noncompliance with the FCRA.

The facts have been further developed in discovery and differ significantly from the allegations in Plaintiff's complaint. Most importantly, Plaintiff now admits that EML "originally furnished only one tradeline," [Doc. 121] at 3, and "that it was Equifax's system that created the duplicate tradeline," [Doc. 123] at 2–3. Critically, EML provided identical information to all three major CRAs and only Equifax began reporting duplicate $52 tradelines *after* Plaintiff sent fraudulent disputes erroneously claiming that her debts were discharged in bankruptcy. It is now clear that Equifax began reporting multiple $52 debts because Equifax interpreted one line item of EML's response to Plaintiff's fraudulent disputes on Equifax's Automated Consumer Dispute Verification ("ACDV") form.[2] EML responded to all ACDV forms by modifying the "Date Open"

---

[2] Responses to consumer disputes are primarily code and form based. The form sent by Equifax to furnishers of information is the ACDV. The ACDV informs the furnisher of the nature of the dispute through a dispute code and invites the furnisher to update or change any information on the form.

field consistent with its records. Instead of changing the "Date Open" like all other CRAs when EML provided the same information, Equifax created duplicate $52 debts on Plaintiff's credit report. The duplicate $52 debts were reported on the Equifax report for three weeks after Plaintiff disputed the duplicate tradelines. From that point forward, Equifax reported that the debts were $0. The record also shows that Plaintiff has suffered no actual economic damages as a result of the duplicate $52 debts.

EML filed two motions to exclude testimony from witnesses for the Plaintiff. It filed a *Daubert* motion to exclude certain opinions of Plaintiff's expert Evan Hendricks on the basis the "[t]he majority of Hendricks' opinions are improper, irrelevant, and inadmissible legal opinions and conclusions, for which he is unqualified to give in any case." [Doc. 106] at 3. The Court agreed and entered an Order ruling that Hendricks would not be permitted to offer legal opinions. [Doc. 135]. EML also filed a motion to exclude undisclosed and improper expert testimony of the 30(b)(6) designee of Equifax, Lisa Willis, and Plaintiff. [Docs. 107, 108]. The Court did not address that motion in its Order. [Doc. 135].

## ARGUMENT

Trial in this matter is set for June 5, 2023. In preparing for trial, EML respectfully requests that the court enter an order precluding Plaintiff from presenting the irrelevant evidence and improper arguments discussed below, many of which involve this Court's relevance rules. Among other things, the evidence discussed below is irrelevant and, if marginally relevant, has probative value that is substantially outweighed by other factors. The Federal Rules of Evidence govern the admission of relevant evidence. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (2) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may be excluded, however, "if its probative value is substantially

outweighed by a danger of" unfair prejudice, confusing the issues, and misleading the jury, among other things. Fed. R. Evid. 403. The trial court must determine whether evidence is admissible, and it has broad discretion in its evidentiary rulings. *See* Fed. R. Evid. 104(a); *United States v. Alaniz*, 726 F.3d 586, 606 (5th Cir. 2013).

**(1)    Undisclosed expert opinions of Lisa Willis, Equifax's 30(b)(6) designee.**

In its prior motion, EML sought to exclude four categories of testimony from the deposition of Lisa Willis, Equifax's 30(b)(6) designee in part because the evidence was undisclosed expert opinion testimony. The Court did not address Ms. Willis's testimony in its Order. [Doc. 135].

Each category of testimony listed below should be excluded because, among other things, it is undisclosed expert opinion. The Federal Rules mandate that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705," i.e. expert testimony. Fed. R. Civ. P. 26(a)(2)(A); L.U. Civ. R. 26(a)(2). If a witness will offer testimony at trial, the testimony must be disclosed if "any part of a witness's opinion … relies upon 'scientific, technical, or specialized knowledge.'" *Caldarera v. Tenn. Log & Timber Homes, Inc.*, 2013 WL 5947396, at *5 (S.D. Miss. Nov. 4, 2013); Fed. R. Evid. 701(c). "[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life." *Id.* Federal Rule of Civil Procedure 37 provides the appropriate sanction for undisclosed expert opinions: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37.

Ms. Willis was not disclosed as an expert witness. In response to EML's prior motion, Plaintiff did not dispute that *if* Ms. Willis's testified to *opinions* (whether expert or lay witness opinions) *then* her testimony must be excluded on the bases that it was not disclosed and does

satisfy the requirements of *Daubert* and Rule 702. *See* [Doc. 119] at 7. Plaintiff did not attempt to rebut EML's assertion that Ms. Willis is attempting to offer testimony that does not "fall within the realm of knowledge of the average layperson," which if opinions, mandates that her testimony be disclosed and satisfy *Daubert* and Rule 702. [Doc. 108] at 6 (citing among other things *Neel v. Fannie Mae*, 2014 WL 1338382, at *3 (S.D. Miss. Apr. 2, 2014) and Fed. R. Evid. 701(c)). Plaintiff asserted only that Ms. Willis's testimony is purely "factual." [Doc. 119] at 1–7. After asserting that each item of Ms. Willis's testimony was "fact" and not "opinion," Plaintiff argued that "[n]one of [Willis's testimony] consisted of personal opinion or an expert opinion. Therefore, Ms. Willis is a factual [witness], and was not required to be disclosed under Rule 26." *Id.* at 7. Thus, Plaintiff has conceded that if the below four categories of testimony is "opinion," it should be excluded as undisclosed expert opinion.[3]

> **a. Lisa Willis' undisclosed expert opinion that furnishers should not change the Date Open in ACDV responses.**

First, Ms. Willis's opinion that the Date Open field in ACDVs "*should not* be changed" by furnishers should be excluded as undisclosed expert opinion, among other things. Ms. Willis left no doubt in her deposition testimony that this was her opinion:

> **In my opinion** – and this is, you know, based on experience and the [Consumer Reporting Resource Guide], then the credit reporting agency should be notified. The ACDV form is not the best way to report to change an open date because it's one of the fields that's not expected to change.

*See* [Deposition of Lisa Willis (filed under seal [Doc. 131])] at 149.[4] Such testimony is *expert* opinion because it does not fall within the realm of knowledge of the average lay person. *Neel*, 2014 WL 1338382, at *3; *see also Warmus v. Equifax Info. Serv., LLC*, 2006 WL 8439367, at *1–

---

[3] EML incorporates by reference its arguments and authorities from its memorandum in support and reply in support of its motion to exclude improper expert opinions. [Docs. 108, 127].

[4] Lisa Willis's 30(b)(6) testimony was sealed by the Court pursuant to an Order dated September 8, 2022. [Doc. 129]. The deposition is filed under seal with this Court as [Doc. 131].

2 (M.D. Fla. Dec. 13, 2006) (ruling that testimony concerning the following was expert opinion: "reporting and reinvestigation procedures" and "standards of care within the industry," including "an opinion on the standard of care in the industry" based on what the defendant "*should have*" done in its ACDVs exchanges).

Because it is undisclosed expert opinion, the Court should exclude Ms. Willis's testimony related to changing the Date Open in ACDV responses on the following pages of Ms. Willis's deposition. [Doc. 131] at 18-19, 81-83, 103-06, 109-12, 116, 127-31, 145, 149.

### b. Lisa Willis' undisclosed expert opinion that furnishers should know duplicate tradelines are reported when a CRA sends multiple ACDVs on the same day.

The Court should exclude Ms. Willis's undisclosed expert opinion that EML's independent contractor—Accenture, LLC ("Accenture")—should have been on notice that Equifax was reporting multiple trade lines because Accenture received two or more ACDVs related to Plaintiff on the same day. Ms. Willis testified in her deposition that two ACDVs being generated for the "same account number with the same dispute code … *should have indicated* to the data furnisher or [EML] that there are two tradelines." [Doc. 119] at 6 (quoting [Doc. 131] at 70-21). Case law confirms that a position on what someone else "should have" known is a topic of expert *opinion*. *See, e.g., Warmus*, 2006 WL 8439367, at *2. Such opinion testimony is obviously beyond the realm of knowledge of the average lay person. *See* [**Expert Report of John Ulzheimer (Ex. 1)]** at 28–29 (EML's expert strongly disagreeing with Ms. Willis's opinion). Moreover, Ms. Willis answered hypotheticals about what EML should have known or should have done based on her alleged undisclosed technical expertise. *Companhia Energetica Potiguar v. Caterpillar Inc.*, 2016 WL 11547499, at *13 (S.D. Fla. June 13, 2016) ("experts, unlike lay witnesses, may answer hypothetical questions"). The Court should exclude all Ms. Willis's opinions pertaining to EML's being on notice of duplicate tradelines. [Doc. 131] at 23, 55-59, 70-71, 75-77.

**c. Lisa Willis' undisclosed expert opinion related to Accenture's responses to ACDVs.**

In this case, EML's independent contractor responded to all ACDVs such that each ACDV contained identical account information for the Plaintiff such that anyone looking at the ACDV responses would know that Plaintiff had only one EML account. However, Ms. Willis offered the undisclosed expert opinion in her deposition that Accenture responded to ACDVs incorrectly:

> **In my opinion**, if there's only one Entergy account, then if this is not the account, then they could have selected delete account for Equifax to delete the accounts. They could have contacted Equifax by other means to advise that these – you know, there's only one account.

[Doc. 131] at 143 (emphasis added). Ms. Willis's testimony concerning the "correctness" of Accenture's ACDV responses is undisclosed expert opinion. *Trinity Indus.*, 2011 WL 13128979, at *1 (N.D. Tex. Sept. 26, 2011); *Warmus*, 2006 WL 8439367, at *2 (what furnisher "should have done" is expert opinion). EML respectfully requests that the Court exclude such opinions at trial. *See* [Doc. 131] at 29-31, 63, 72, 77, 79, 89, 111, 126–29, 143, 149, 151.

**d. Lisa Willis' undisclosed and expert opinion that Plaintiff's dispute letters were actually attached to Equifax's ACDVs that Accenture received.**

Ms. Willis's testimony that Plaintiff's dispute letters were actually attached to Equifax's ACDVs to Accenture should be excluded for multiple reasons. As the Court may be aware from prior briefing, no documentary evidence has been produced in this case that Accenture or EML ever received the dispute letters that Plaintiff sent to Equifax. Accenture denies viewing the dispute letters. The ACDVs produced in discovery do not demonstrate what, if anything, was attached to the ACDVs, the codes on the ACDVs and dispute letters do not match, and the ACDVs do not contain any code or other indication that Plaintiff was disputing that multiple tradelines were reported on her credit report.

First, the subject testimony is Ms. Willis's undisclosed expert opinion based on her technical knowledge of the inner-workings of Equifax's system. *See Morgan v. U.S. Xpress, Inc.*,

2006 WL 278398, at *3 (M.D. Ga. 2006). As was the employee's testimony in *Morgan*, Ms. Willis's testimony in this respect is "an extensive explanation of '*how the system really works*'" and application of "specialized knowledge and understanding of the *inner-workings of Defendant's computer system* rather than on [her] particular experience in accessing and retrieving the specific data at issue in this case." *Id.* Ms. Willis admits she was not the Equifax employee that interacted with EML, "retrieving the specific data at issue in this case." *Id.*; *see* [Doc. 131] at 6; *see* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter"). She gained any knowledge she had regarding the attachment of the dispute letter in this case from "the inner-workings of [Equifax's] computed system," and she substantiated her dispute-letter testimony with "an extensive explanation of 'how the system really works.'" *Morgan*, 2006 WL 278398, at *3; [Doc. 131] at 121. Her testimony in this regard is expert *opinion*.

Second, Ms. Willis's unsupported, speculative opinion that Plaintiff's dispute letters were attached to the ACDVs is likewise inadmissible under the best evidence rule. Ms. Willis is a "litigation support consultant" that gathered her knowledge of this case by after-the-fact research, i.e. alleged[5] review of documents and Equifax's "system." [Doc. 131] at 6. As a result, any knowledge she may have regarding what, if anything, was attached to an ACDV could only have been gained by her own speculation or her review of some document that has not been produced in the case and cannot be offered by Plaintiff. Because Plaintiff is attempting to submit Ms. Willis's testimony regarding any such non-produced document "in order to prove its content," Federal Rule of Evidence 1002 (commonly known as the best evidence rule) renders Ms. Willis's testimony is inadmissible. Fed. R. Evid. 1002; *see e.g. Kiva Kitchen & Bath Inc. v. Cap. Distributing, Inc.*, 319

---

[5] Along that line, Ms. Willis's opinion that the dispute letters were attached is nothing but her own *ipse dixit* of which there is no documentary or other corroboration. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

F. App'x 316, 322 (5th Cir. 2009) (best evidence rule prevents testimony regarding document where the witness's "knowledge [is] gained from a writing, recording, or photograph depicting the event"). Thus, Willis's dispute-letter testimony should be excluded as undisclosed, unsupported opinion that also violate the best-evidence-rule. [Doc. 131] at 26–29, 50–54, 60–63, 67–68, 71, 77, 121–25.

### (2)    Plaintiff's undisclosed, improper, and irrelevant evidence concerning the effect of the duplicate tradelines on her credit.

In her deposition, Plaintiff attempted to offer testimony concerning the impact of the duplicate reporting of her $52 EML debt on her credit. *See, e.g.*, **[Deposition of Cynthia Walker (Ex. 2)] at 107** ("*we know* creditworthiness is based on … your current history with credit accounts"). Although she had no knowledge of any creditors denying her credit because of EML or the criteria under which any creditor reviewed her credit, Plaintiff testified that she "assume[s]" Equifax's duplicate reporting "could have factored into their consideration process." *Id.* at 107–08. She admitted that the "other negative items on [her] credit report ... very well could have" been considered by creditors, but testified that "most of them were dealing with … negative payments, like negative payments not received on time. And *general knowledge*, *a charge-off has more impact than a missing payment*." *Id.* at 108 (emphasis added). She repeatedly testified that "*we know* a charge-off" affects a credit score more than other derogatory remarks, which she admitted she had many unrelated to EML. *Id.* at 104 ("We know one charge-off has a huge impact on your credit"). This evidence must be excluded for multiple reasons.

First, Plaintiff's testimony related to the effects of the duplicate tradeline on her credit should be excluded as undisclosed and inadmissible expert opinion. This Court has held that "an ordinary lay person [cannot] estimate with any reliability the number of credit points lost due to negative reporting" because such a complex calculation does not "fall[] within the realm of knowledge of the average lay person." *Neel*, 2014 WL 1338382, at *3. Plaintiff is not a credit

reporting expert and cannot offer testimony concerning the impact of the duplicate $52 debts on her credit score and speculate as to how that reduction in credit score affected some potential creditors' decision to extend her credit. *See* Fed. R. Evid. 702 (requiring person testifying to technical or specialized knowledge be "qualified as an expert by knowledge, skill, experience, training, or education"). Plaintiff's lack of credentials render inadmissible *any* testimony on such technical and complicated issues. *Id.* Thus, Plaintiff's testimony related to the effects of the duplicate tradeline on her credit should be excluded. Ex. 1 at 101, 103-12.

Second, Plaintiff cannot offer testimony regarding whether or how creditors' decisions were affected by the duplicate $52 debt because she can offer nothing but speculation in support. Fed. R. Evid. 602 ("A witness may testified to a matter only if … the witness has personal knowledge of the matter"). Plaintiff has no personal knowledge if creditors denied her credit or offered credit on less favorable terms because of her duplicate $52 debt on her *Equifax* credit report.[6] Plaintiff has produced no documentary evidence that any creditor considered her multiple $52 debts or took any adverse action against Plaintiff because of those $52 debts. *Cameron v. Greater N.O. Fed. Credit Union*, 713 F. App'x 238, 241 (5th Cir. 2018) (stating "plaintiff must present some evidence that the potential creditor's decision was affected by the defendant's FCRA violations" and affirming summary judgment although plaintiff "was able to point to a document … that showed that a creditor at least partially relied on information from Experian, [because] he provided no evidence that the reliance resulted in a credit denial").

Along that line, because there are no documents demonstrating any creditor considered Equifax's reporting of duplicate $52 debts, any testimony that any creditor may have considered Equifax's reporting of duplicate $52 debts in evaluating whether or on what terms to extend

---

[6] It is undisputed the other credit reporting agencies did not report duplicate $52 debts for Plaintiff, only Equifax did. The only documentation of credit denials Plaintiff produced in discovery did not utilized other credit reporting agencies' credit reports.

Plaintiff credit would be inadmissible hearsay. Fed. R. Civ. P. 801, 802.

Finally, even if there were some probative value to Plaintiff's speculative, subjective belief that creditors may have denied her credit or extended credit on less favorable terms because of multiple $52 EML debts reported on her Equifax credit report, such probative value is marginal and substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Civ. P. 403. Testimony that creditors *may* have considered the duplicate tradelines would be speculation, and the jury would misconstrue that speculation as fact. Therefore, any testimony from Plaintiff concerning the impact of the $52 debt on her credit score or creditor's actions based on the duplicate $52 debt should be excluded.

**(3)   Legal opinions and conclusions of Evan Hendricks.**

This Court ruled in its Order concerning EML's *Daubert* motion to exclude the testimony of Evan Hendricks that Hendricks would not be permitted to offer legal opinions but did not specify which of Mr. Hendricks's legal opinions would be excluded. [Doc. 135]. Based on the Court's ruling and the legal authorities incorporated in EML's memorandum and reply in support of its *Daubert* motion, EML respectfully requests that the following opinions from Hendricks's expert report be excluded as improper and irrelevant legal opinions and conclusions. Hendricks's legal conclusions that merely "tell the jury what result to reach," *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983), including:

- EML "failed both its accuracy-related responsibilities" under the FCRA, **[Expert Report of Evan Hendricks (Ex. 3)]** at 1;

- EML "failed to conduct an adequate investigation," *id.*;

- EML's "investigation was inadequate," *id.*;

- EML's responses were "inadequate," *id.* at 2;

- EML's response was "unreasonable," *id.* at 4;

- EML did not "conduct an adequate investigation," *id.* at 4; and

- EML's investigation "did not constitute a reasonable investigation," *id.* at 8.

*See* [Doc. 106] at 4 (listing authorities ruling that Hendricks could not render the above-listed opinions).

Hendricks should also not be permitted to testify about statutory text, case law, the historical background of the FCRA, or other legal materials because those opinions usurp the function of the Court. *Virginia College, LLC v. Martin*, 2012 WL 6588700, at *1 (S.D. Miss. Dec. 17, 2012) ("Opinions that are 'nothing more than legal arguments' are not admissible"); *Brown v. Vivint Solar, Inc.*, 2020 WL 1479079, at *4 (M.D. Fla. Mar. 26, 2020) (ruling that "Hendricks may not testify about, or cite to, the following: (1) case law … ; (2) the historical background of the FCRA and Congressional findings … and (3) FTC staff opinions"). The opinions that should be excluded include:

- the FCRA's "duty on 'furnishers' … to report accurate information … and to investigate inaccurate and/or incomplete data," Ex. 3 at 1;

- what the provisions of the FCRA mean or require, *id.* at 1, 5, 6–15;

- legal opinions, case law, FTC staff opinions, and other legal authorities offered to show the "important standard" of "accuracy" in consumer reporting, *id.* at 6–8;

- legal cases substantiating the opinion that EML's investigation and reporting was not reasonable, *id.* at 8–15; and

- discussions of legislative history of the FCRA, *id.* at 1.

Each of the above opinions should be excluded pursuant to this Court's order and the applicable law.

**(4)    Any testimony concerning actual economic damages suffered by Plaintiff.**

Plaintiff has not produced proof in discovery of actual economic damages, and, therefore, any evidence of actual economic damages should be excluded from the jury as irrelevant and unduly prejudicial. *See* [Doc. 104] at 8–12; [Doc. 125] at 5–8. In order to recover actual economic damages, Plaintiff "must present some evidence that the potential creditor's decision was affected

by the defendant's FCRA violations." *Cameron v. Greater N.O. Fed. Credit Union*, 713 F. App'x 238, 241 (5th Cir. 2018). Plaintiff has no evidence in this case (and does not attempt to cite any) that any creditor denied her credit because of EML's alleged violations of the FCRA. Her sole disclosed expert has offered no testimony concerning damages. Ex. 3. Plaintiff has no documents demonstrating that any creditor denied her credit because of the duplicate $52 debts reported on her Equifax credit report. She has not disclosed as potential witnesses any creditors that allegedly denied her credit or offered less favorable terms because of her duplicate $52 debts on her Equifax credit report. Plaintiff had the lowest possible credit rating even before the duplicate $52 debts were reported, and she can offer no evidence as to the extent the duplicate $52 debts (which were only reported for three weeks after her dispute) impacted her credit score or the extent the substantial other negative items on her credit report impacted her credit. Therefore, any evidence or reference to Plaintiff's suffering economic losses because of Equifax's reporting of the $52 debts should be excluded as irrelevant and, if marginally relevant, unduly prejudicial. *See* Fed. R. Evid. 401, 403.

In the alternative, any evidence on actual economic loss must be strictly limited to Plaintiff's conclusory testimony that she refrained from applying for a mortgage and a job because of the duplicate $52 tradelines. *See* [Doc. 125] at 6. EML moved for summary judgment on actual economic damages, and Plaintiff's only response was citing her deposition testimony that she refrained for applying for a mortgage and a job. *Id.* This evidence is "too speculative" to present actual economic damages to the jury. *Id.* at 6–7 (quoting *Casella v. Equifax Credit Info Servs.*, 56 F.3d 469, 475 (2d Cir. 1995). The Court should exclude all evidence of actual economic damages. But if the Court disagrees, evidence of actual economic damages should be strictly limited to Plaintiff's conclusory "refrain" testimony. Admitting any other evidence would be irrelevant and overly prejudicial and would confuse the issues. Fed. R. Evid. 401, 403.

(5)     **Any testimony concerning actual emotional distress damages.**

The Court should exclude as irrelevant and unduly prejudicial any evidence or argument concerning actual emotional distress damages Plaintiff allegedly suffered. "A claim related to emotional distress requires a 'degree of specificity' and 'must be supported by evidence of genuine injury,' such as 'the observations of others,' 'corroborating testimony,' or 'medical or psychological evidence.'" *Bacharach v. Suntrust Mortg. Inc.*, 827 F.3d 432, 436 (5th Cir. 2016) (quoting *Cousin v. TransUnion Corp.,* 246 F.3d 359, 371 (5th Cir. 2001)). Plaintiff has no evidence of the required observation of others, corroborating testimony, or medical evidence. Therefore, any evidence concerning alleged emotional distress Plaintiff may have suffered should be excluded as irrelevant or, alternatively, unduly prejudicial and likely to confuse the actual issues. Fed. R. Evid. 401, 403.

(6)     **Testimony of Amber Fuller.**

Amber Fuller's testimony should be excluded as irrelevant and prejudicial. First, all evidence of actual damages (economic and emotional distress) should be excluded as irrelevant because Plaintiff cannot prevail on those claims as a matter of law.

Second, Ms. Fuller's testimony should be excluded because she provides no testimony to any relevant issue. Plaintiff disclosed Ms. Fuller as a witness for the sole purpose of attempting to corroborate Plaintiff's claims of emotional distress suffered as a result of Equifax's reporting of duplicate tradelines for Plaintiff. However, Ms. Fuller testified to that she had not spoken with Plaintiff about Plaintiff's credit issues "since 2017," and Plaintiff first disputed the duplicate tradelines with Equifax no earlier than June 25, 2018. **[Deposition of Amber Fuller (Ex. 4)]** at 19. Ms. Fuller testified that she spoke with Plaintiff about her credit and stress when Plaintiff was living in her apartment, *id.* at 11, 20; but Plaintiff testified that she moved from her apartment in 2016, Ex. 2 at 25–26. When being questioned by Plaintiff's counsel, Ms. Fuller reiterated that she

knew "for a fact" that her last discussions regarding Plaintiff's stress and headaches occurred in 2017. Ex. 4 at 24.[7]

Because Ms. Fuller testified only to Plaintiff's stress no later than 2017 and Plaintiff could not have suffered emotional distress from EML's actions until at least June 2018, Ms. Fuller's testimony is irrelevant and should be excluded. Fed. R. Evid. 401, 403.

**(7)    Documents from creditors produced by Plaintiff.**

Plaintiff produced in discovery documents from Capital One, Goldman Sachs, Mississippi Federal Credit Union, and Navy Federal Credit Union that she received in response to subpoenas. All such documents should be excluded for the purposes of Plaintiff proving she has suffered economic damages.[8]

First, as discussed above, Plaintiff has no evidence of any actual economic damages resulting from a creditor denying her credit or extending credit on unfavorable terms because of her duplicate $52 debts or otherwise. To prove such actual economic damages, Plaintiff would be required to either perform a complex credit score evaluation to determine how the duplicate tradelines affected her credit score or obtain evidence from the creditor that the creditor denied credit or extended credit on unfavorable terms because of the duplicate $52 debt. Plaintiff has no such evidence. Therefore, any creditor documents are not relevant to any issue before the jury and, if relevant, would only confuse the jury and unduly prejudice EML.

Moreover, each of the creditor documents demonstrate such documents are irrelevant. The Goldman Sachs documents show that Plaintiff applied for an Apple Card four times in 2019 and

---

[7] Ms. Fuller testified she "spoke with [Plaintiff] about [Plaintiff's] credit … in 2019" but the "nature of [her] discussion" in 2019 was that "Plaintiff just referred me to open an account" with Navy Federal. Ex. 4 at 22. According to Ms. Fuller, Plaintiff had "opened some accounts there. And she sent me a referral to open one as well." *Id.* at 14. It "was a positive thing for [Plaintiff's] credit score." *Id.*

[8] This evidence is relevant to demonstrate Plaintiff suffered no damages whatsoever and had extremely poor credit notwithstanding the duplicate $52 tradelines.

2020 and that Goldman Sachs denied her credit those four times because of Plaintiff's poor *TransUnion* credit report. *See* Ex. 1 at 24. It is undisputed *only Plaintiff's Equifax credit report contained duplicate $52 tradelines* for a short time in 2018. The Capital One documents are irrelevant for Plaintiff's case in chief because they show that Plaintiff applied for credit in October 2015 and December 2017, and both of those "denials occurred prior to any duplicate [EML] accounts appearing on Plaintiff's Equifax credit report." *Id.* Similarly, the Mississippi Federal Credit Union documents demonstrate credit applications in 2016, again, prior to any duplicate tradeline being present on Plaintiff's Equifax credit report. Finally, the Navy Federal documents show Plaintiff was denied credit three times, but they are undated and do not indicate whether an Equifax credit report was used in evaluating the extension of credit. However, the same documents demonstrate that Plaintiff was able to open two accounts in January 2019. There is no indication that Plaintiff was denied credit by Navy Federal because of the duplicate EML tradelines. *Id.* As a result, admitting Plaintiff's creditor documents in Plaintiff's case and chief to demonstrate any actual economic damages would be irrelevant and unduly prejudicial. Such documents are relevant for other purposes such as a showing that any damages Plaintiff allegedly suffered (if those claims are not dismissed by the Court) were caused by her already very poor credit.

**(8)    Testimony concerning Accenture changing the Date Open or providing an incorrect Date Open on ACDV responses.**

In order to recover pursuant to 15 U.S.C. § 1681s-2(b), Plaintiff must prove that EML provided inaccurate information to a consumer reporting agency, that Plaintiff disputed that incorrect information to the consumer reporting agency, that EML failed to investigate that item of information, and that the incorrect information caused her damages. Plaintiff alleges in her complaint that the "inaccurate information" EML allegedly provided was duplicate tradelines. [Doc. 42] at ¶9 (EML "began reporting the [$52] debt to Equifax in two separate trade lines"). In summary judgment briefing, however, Plaintiff attempted to change her theory and argued that

Accenture changed the Date Open field in ACDV responses or provided inaccurate Date Open information that "caused the duplicate tradeline." [Doc. 123] at 2. Plaintiff's cause and effect theory is inconsistent with Section 1681s-2(b). Because Plaintiff allegedly disputed duplicate tradeline information and was allegedly injured by duplicate tradeline information, any evidence that Accenture changed the Date Open or provided inaccurate Date Open information is irrelevant, unduly prejudicial, and would confuse the jury.

**(9)    Testimony referring to Accenture as "Entergy" or "EML."**

The Court should prohibit Plaintiff, any witness, or counsel from equating Accenture with EML. As demonstrated in prior briefing, Accenture—EML's independent contractor for consumer disputes—performed all investigations into Plaintiff's credit disputes through e-Oscar and ACDVs. EML "is not responsible under the doctrine of *respondeat superior* for injuries [and damages] caused by the acts of an independent contractor," such as Accenture. *Gleeslin v. Nissan Motor Acceptance Corp.*, 1998 WL 433932, at *3 (N.D. Miss. June 3, 1998). The jury must decide whether Accenture is in fact EML's independent contractor. Therefore, it is essential that all attorneys and witnesses be specific as to the relevant actor when discussing the facts of this case. Equating Accenture with EML would be incorrect, irrelevant, and would confuse the issues and unduly prejudice EML's theory of the case. *See* Fed. R. Evid. 401, 403.

**(10)    Financial or other prejudicial information about EML.**

Any evidence of the net worth, financial condition, sales volume, or other evidence suggesting or bearing upon the financial condition, size or scope of EML operations, including Budget and assets of EML's credit department, is irrelevant and unduly prejudicial. Such evidence has no bearing on the issues in this case and is irrelevant. Fed. R. Civ. P. 401. Alternatively, such evidence should be excluded because its probative value would be substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, and wasting judicial resources.

Fed. R. Evid. 403; s*ee also Cooper Tire and Rubber Co. v. Farese*, 2008 WL 5382416, at *3 (N.D. Miss. Dec. 19, 2008) (references to a party as a "wealthy, thriving, large company" and references to a company's finances and size held irrelevant and excluded at the motion *in limine* stage). The Court has excluded "similar 'David and Goliath' arguments about the relative size, wealth, income, and financial strength of the parties" under Rule 403. *Sun State Oil, Inc. v. Pahwa*, 2021 WL 2877907 at *4 (S. D. Miss. July 8, 2021) (citing *Rogers v. Medline Indus., Inc.*, 2019 WL 402361, at *3-4 (S.D. Miss. Jan. 31, 2019)).

To the extent this evidence could be relevant to a punitive damages claim, the Court should not allow this testimony until it first determines there is a basis for punitive damages.

**(11)   Evidence or suggestion that EML is in the business of credit reporting, created Plaintiff's or any other person's credit report, or "reported" Plaintiff's or any other person's credit.**

EML is not in the business of credit reporting, it is not a credit reporting agency, and it does not "report" consumers' credit for commercial gain or otherwise. Instead, EML, like other businesses, supplies information regarding consumers to credit reporting agencies like Equifax which then issues "credit reports" for commercial gain. Furnishers like EML have "no control over what is ultimately reported by the credit reporting agencies" on a credit report. *Spencer v. Specialized Loan Serv., LLC*, 2021 WL 4552548, at *8 (N.D. Tex. Sept. 1, 2021). Therefore, this Court should exclude any evidence or suggestion that EML "reported" Plaintiff's credit or any other person's credit because the same would only unduly prejudice EML and confuse the issues. Fed. R. Evid. 401, 403.

**(12)   Evidence about a class action, other plaintiffs, or other persons potentially allegedly harmed or potentially harmed by EML's consumer dispute practices.**

Plaintiff originally filed this action as a putative class action but failed to seek class certification. As a result, any reference to this case as a class action will be irrelevant and unduly prejudicial and should be prohibited. *See* Fed. R. Evid. 401, 403.

Along that line, there has been no evidence produced in this case regarding duplicate tradeline issues with any person other than Plaintiff. Any argument or suggestion that there may be other persons whom may have been or may be harmed by Equifax's reporting of duplicate EML tradelines is nothing but speculation. Such speculation is irrelevant and, if not irrelevant, unduly prejudicial. Fed. R. Evid. 401, 403. Moreover, were there any evidence of other persons with duplicate EML tradelines, there could be no conceivable purpose to admit such evidence other than to show EML's "character in order to show that on a particular occasion [EML] acted in accordance with the character," which is impermissible under Rule 404(b). Thus, any reference or evidence to EML's other investigations into duplicate tradelines (if any) or other persons harmed by alleged reporting of duplicate tradelines (if any) should be excluded as speculative and irrelevant. Fed. R. Evid. 401, 403, 404(b).

**(13)    Documents and other evidence not disclosed in discovery.**

Rule 37(c) of the Federal Rules of Civil Procure states: "If a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 516 (5th Cir. 1993) ("Our discovery and disclosure laws and rules, designed to end trial by ambush"). EML's Interrogatories and Requests for Production of Documents requested that plaintiff identify and produce all evidence she intends to introduce at trial. EML has worked toward trial with the understanding plaintiff has identified and produced everything she intends to use at trial on or before the deadline for close of discovery. Accordingly, any attempt by Plaintiffs to offer documentary evidence not disclosed in discovery will unfairly prejudice EML and should be excluded.

**(14)    Reference to this or other motions or the Court's rulings on those motions.**

EML has moved *in limine* to exclude certain evidence on the basis that it is entitled under the Federal Rules of Evidence and Rules of Civil Procedure to request exclusion of evidence, which it in good faith contends is inadmissible. Evidence that EML has made such a request should not be alluded to at trial in any fashion under Rules 401, 402, and 403 of the Federal Rules of Evidence.

Moreover, EML moved for summary judgment, leave to permit interlocutory appeal, and to exclude Plaintiff's expert witness. The Court denied the motion for summary judgment and motion for leave on the basis there are "factual disputes to be resolved." [Doc. 151] at 2. The Court granted in part and denied in part EML's *Daubert* motion. EML respectfully requests that the Court exclude any argument or reference to those prior motions or the Court's rulings as a means of attempting to bolster Plaintiff's case or otherwise. Such other motions and rulings are irrelevant to the factual issues before the jury and would be unduly prejudicial to EML. *See* Fed. R. Civ. P. 401, 403.

**(15)    Discovery disputes or EML's discovery objections.**

Evidence of discovery disputes and EML's discovery objections are not relevant to the issues to be tried by the jury. Evidence relating to discovery disputes has no tendency to make a fact "more or less probable" and such evidence is not "of consequence" in determining the issues for trial.  *See* Fed. R. Evid. 401.  Evidence of discovery disputes or discovery objections is also unfairly prejudicial to EML. Unfair prejudice, in the context of Rule 403, means an "undue tendency to move the tribunal to decide on an improper basis," *Whitehead ex rel. Whitehead v. K Mart Corp.*, 173 F. Supp. 2d 553, 559 (S.D. Miss. 2000), and this Court excludes such evidence as irrelevant and prejudicial, *Woulard v. Greenwood Motor Lines, Inc.*, 2019 WL 3318467, at *5 (S.D. Miss. 2019).

**(16)** **Prejudicial questions during *voir dire* as to amount a juror would award in damages.**

The Court should prohibit any questions by the Plaintiff's attorney to prospective jurors as to whether they could award a certain specified amount of damages or type of damages if the evidence justified or supported it. Questions regarding a specific amounts or types of damages to prospective jurors could lead the jury to confuse the *voir dire* questions with the evidence (or lack therefore) presented at trial and should be prohibited. Fed. R. Evid. 403.

**(17)** **Evidence as to the amount of costs of prosecuting the case or the amount of cost of defense.**

If the Court finds *after trial* that the Plaintiff has prosecuted a "successful action" to enforce the FCRA, then the Court in its discretion may conduct an attorney's fee analysis. 15 U.S.C. §§ 1681n, 1681*o*. The Court will conduct a reasonable-attorneys'-fee analysis only *after* any verdict by the jury as to liability under the FCRA. *See, e.g.*, *Johnson v. ChoicePoint Serv., Inc.*, 2004 WL 253460, at *4 (E.D. La. Feb. 10, 2004). While the fact that a plaintiff in a FCRA case may recover attorneys' fees is relevant to show credibility, motive, and bias, the *amount* of attorneys' fees and other costs the Plaintiff may have incurred in prosecuting this case is not relevant to any issue before the jury and would be unduly prejudicial if marginally relevant. Fed. R. Civ. P. 401, 403. Along that line, any evidence or argument related to the costs of EML's defense is not relevant or any marginal relevant would be substantially outweighed by undue prejudice and the likelihood it would confuse the jury.

**(18)** **Evidence of mere "possibilities" and other speculation.**

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. This rule prohibits speculative testimony. *Moore v. Estate of Posey*, 2021 WL 2660619, at *2–3 (S.D. Miss. Apr. 14, 2021). Testimony regarding mere "possibilities" is also prohibited. *See, e.g., New York*

*Life Ins. Co. v. Trimble*, 69 F.2d 849, 850 (5th Cir. 1934) ("Verdicts must rest on probabilities, not bare possibilities"). Thus, the Court should exclude testimony regarding mere possibilities in connection with this case and other speculation that is not based on a witness's personal knowledge.

**(19)    Other incidents, claims, lawsuits, or acts of EML.**

The Court should exclude evidence or arguments related to any other incidents, claims, and/or lawsuits involving EML (if any). First, no such other incidents, claims, and/or lawsuits involving EML have been produced in discovery, so such evidence should be excluded. *See* Fed. R. Civ. P. 37. Moreover, evidence concerning other accidents, incidents, complaints, lawsuits, actions, and/or claims are inadmissible because they are: (a) irrelevant, (b) inadmissible under Rule 404(b) because there is no permissible purpose for such evidence in this case, (c) hearsay without an exception; (d) unduly prejudicial; (e) likely to cause confusion; and (f) likely to unduly prolong the trial.

**(20)    Reference to Plaintiff as a "victim."**

The Court should exclude any reference to Plaintiff as a "victim." This term incorrectly implies the existence of a "criminal" legal proceeding and serves only to improperly inflame certain jurors and violate their oath not to let bias, sympathy, or prejudice play any part in their deliberations. The terms "Plaintiff" or simply using plaintiff's name are viable alternatives that would not unduly prejudice EML.

<u>**CONCLUSION**</u>

EML respectfully requests that the Court enter an order excluding evidence, testimony, argument, or any references to the above matters at trial by Plaintiff and her counsel and witnesses. Any evidence, testimony, or references to these matters would be inadmissible under the Federal Rules of Evidence. EML requests such other relief as the Court deems just and proper.

Dated: April 21, 2023.

ENTERGY MISSISSIPPI, LLC
(f/k/a Entergy Mississippi, Inc., f/k/a Mississippi
Power & Light Co.)

 /s/ William Trey Jones, III
One of its Attorneys

OF COUNSEL:

Christopher R. Shaw (MSB# 100393)
ENTERGY MISSISSIPPI, LLC
308 E. Pearl St., Suite 700 (39201)
P.O. Box 1640
Jackson, MS  39215-1640
T:  (601) 969-2438 │ F:  (601) 969-2696
cshaw4@entergy.com

BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
William Trey Jones, III, MSB No. 99185
tjones@brunini.com
Jacob A. Bradley, MSB No. 105541
jbradley@brunini.com
P.O. Drawer 119
Jackson, MS 39205
Telephone: (601) 948-3101
Facsimile: (601) 960-6902

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused the foregoing to be electronically filed with the

Clerk of the Court using the Court's electronic-filing system which sent notice of this filing to all

counsel registered for electronic service.

Dated: April 21, 2023.

/s/ William Trey Jones, III
William Trey Jones, III